|  |  |
|---|---|
| Arthur J. Billinge | |
| vs. | Eq. No. 8992. |
| Michael J. Read, et als. | |

July 14, 1930.

BAKER, J. Heard on the merits.

The bill is brought by the complainant as trustee in bankruptcy of one Michael J. Read, who is a respondent. The other respondents are the sons of said Michael J. Read, and the wife of one of them, and the daughter and her husband.

The bill is brought on the theory that the said Michael J. Read and the other respondents made transfers and conveyances of property without consideration, and fraudulently, for the purpose of delaying, hindering and defrauding present and future creditors of the respondent Michael J. Read, and seeks to have these transfers and conveyances set aside in order that the complainant may obtain possession of the property as part of the estate of said bankrupt.

The property involved consists of certain real estate located in and near the City of Providence, certain mortgages, or the proceeds thereof, and moneys as evidenced by numerous bank accounts. The claim of the respondents is that the properties and funds involved herein belong entirely to the children of the said Michael J. Read and were not in any way his or part of his estate, and that no transfers or conveyances were made in defraud of creditors.

The testimony as presented reveals at considerable length and in detail a great many transactions, covering a considerable period of years, in which Michael J. Read was involved. It would not be possible, and it does not appear necessary, to refer specifically to each one of these matters at this time.

Mr. Read was a master plumber who continued in business up to some 5 or 6 years ago. For a long period of time he was also engaged in lending money, buying and selling real estate, and handling mortgages. In October, 1899, his wife died. At that time his daughter, who was his youngest child, was less than a year old. She became of age in 1920. At the time of her death Mrs. Read was the owner of some real estate in Providence. She left no will. Apparently the title to this property, subject to Mr. Read's right of curtesy, came to his children. He was, of course, at that time under the law entitled to whatever personal property his wife may have left. There

is some testimony in the case that there was a sum of about $3000 in the hands of a third person which belonged to the three children.

The respondents' claim is that Mr. Read supported the family from his earnings and that he took the rents of the real estate and the $3000 above referred to, and from 1899 up to within a few years successfully handled and invested this money for his children, and that no part of it belonged to him.

It would appear that while his children were minors and not emancipated, Mr. Read would be entitled to their earnings. The respondents argue that such money as was earned by the children was turned into the common fund for their benefit. The daughter, Margaret Carter, attempted to impress the Court with the fact that she earned considerable money before her marriage. The testimony of Mr. Wallace, from the company for which she worked, rather indicated that she did not earn the large sums she testified to. One of Mr. Read's sons is unmarried and a sailor, who is away from Providence a good deal. The other son, a painter, is married.

After his wife's death, Mr. Read engaged actively in the purchase and sale of real estate, the taking of mortgages and the lending of money, with considerable success financially. Many of the transactions referred to in the testimony are not particularly material as far as the relief prayed for is concerned, because they are closed and the property disposed of, but they are helpful in throwing light on Mr. Read's method of doing business. Between the years 1920 and 1922 he had in his own name the larger part of the properties involved in this case. After that date numerous transfers were made to his children and by the children to each other. For these transfers it is quite clear that there was no consideration. All during this period Mr. Read was involved in litigation of various types, both at law and in equity. It

is unnecessary to refer to all of them but it would appear that one of the Braun suits was brought early in 1922 and the Swedberg case against Mr. Read, from which has developed the present proceeding now before the Court, was begun in May, 1923.

A careful examination of the various transactions presented to the Court for its consideration reveals clearly that Mr. Read was a very shrewd and somewhat unscrupulous trader in real estate. During all this time Mr. Read and his children maintained numerous bank accounts in almost every bank in the City of Providence. There was also one large account in a Boston bank. These accounts were transferred from one to another and were closed and re-opened for reasons no one satisfactorily explained. Some of the accounts were very small, others were large.

Michael J. Read and his daughter, Margaret Carter, were the only respondents who testified. The Court was not favorably impressed with their manner of giving evidence. They lacked frankness, evidence considerable forgetfulness in connection with important matters, and obviously did not desire to reveal more concerning the transactions involved than was absolutely necessary. Also the testimony given by Mr. Read in this proceeding and that given before the Referee in Bankruptcy and on the occasion of his taking the poor debtor's oath was contradictory in several particulars.

After reviewing all the testimony presented and drawing therefrom reasonable deductions, the Court has come to the conclusion that the complainant has proved sufficiently, clearly and convincingly by a fair preponderance of the evidence that certain of the transfers referred to in the bill were made fraudulently and for the purpose of hindering and defrauding Mr. Read's creditors. In this connection it is of interest to compare the dates when transfers of property were made

and large withdrawals from bank accounts took place with the date of Mr. Read's imprisonment on the execution in the Swedberg case, the date of the bankruptcy proceeding and the date when litigation was pending against him.

The testimony of the witnesses Gray, Tubbs and Swedberg is material in relation to statements alleged to have been made by Mr. Read as to the ownership of certain parcels of property. Further, even if we assume it to be true that certain moneys in the banks belonged to Mr. Read's children and not to himself, this in the judgment of the Court furnishes no reasonable explanation for the manner in which the bank accounts were handled. A father investing money for his children legitimately would have no need or occasion to maintain bank accounts in the manner they were maintained by this family. The Court is of the opinion that it is a fair and reasonable conclusion that Mr. Read and his sons and daughter desired as much as possible to keep funds and property out of the reach of Mr. Read's creditors.

It now becomes necessary to refer briefly to certain specific parcels of property and mortgages.

The Court is of the opinion that the Landor Street property never belonged to Mr. Read. The title was in Mr. Read's wife at the time of her death and the Court can not find from any evidence presented that transfers as to this parcel were made in defraud of creditors and the Court finds that the complainant is not entitled to any relief in connection with this property.

As to the house and lot on Ardoene Street, the weight of the testimony would tend to show that this belongs to Michael W. Read, the son of Michael J. Read. The latter never had any title to this parcel and there would seem to be no reasonable ground for holding that it was part of his estate.

The property on Wise Court, comprising lot No. 3 on the Waterman Plat, according to the undisputed testimony, was purchased by the daughter, Margaret Carter, and her husband with their own money. Apparently Michael J. Read never collected any of the rents from this parcel. The Court believes that on the whole the weight of the testimony shows that this property was not part of the estate of Michael J. Read but that it belongs to his daughter and that the complainant is not entitled to relief in this connection.

As to the other parcel on Wise Court, comprising Lot No. 4 on the Waterman Plat, and as to the property on Atlantic Avenue in the City of Providence, and the parcels in the City of Cranston on Wellington Avenue, the Court, for the reasons it has hereinbefore indicated, is of the opinion that these were and are parts of the estate of Michael J. Read. He has had at different times title to them all and in the judgment of the Court the various transfers made by him and his children of these parcels were fraudulent and for the purpose of hindering and delaying Mr. Read's creditors. As to these parcels the Court is of the opinion that the complainant is entitled to the relief prayed for in his bill.

The Wood property in Warwick, which was made part of the bill of complaint during the trial, as the record will show, was purchased at a foreclosure sale by Michael J. Read and title taken in the name of the respondent Margaret Carter. The claim is made that the money for this purchase came from the children's funds, although no satisfactory or direct evidence of this is produced.

From all the surrounding circumstances, the Court believes that this parcel was also a part of Mr. Read's estate and that the taking of the title in the name of his daughter was for the purpose of defrauding his creditors, and that the complainant is entitled to relief as to this property.

An examination of the bank accounts shows a very confused and unexplainable situation. It may well be that at least a substantial portion of these bank accounts were actually the money of Michael J. Read, although apparently, from her testimony, the daughter, Margaret Carter, now has in her possession large amounts withdrawn from the banks. In the Industrial Trust Company in Providence, in the savings department, an account stood in the name of Michael J. Read from February 4, 1921, to February 25, 1927. On April 16, 1924, $14,847 was drawn from this account and transferred to the account of Margaret M. Carter in the same bank. This latter amount was closed May 10, 1928. On February 1, 1928, the sum of $23,900 was withdrawn. Where it went, no one seems to know. Mrs. Carter's explanation is that in April, 1924, she was demanding of her father that she be given her share of the money from the bank account and that this accounts for the transfer of $14,847 to her account. This still leaves the accounts in the bank in Boston and in the Mechanics National Bank unexplained. However, the Court realizes the difficulty of attempting to trace funds and follow money, particularly where accounts are transferred and mingled, and for that reason the Court thinks that the complainant has not sustained the burden of proof in tracing into the hands of these respondents any particular sums of money from these bank accounts, and as to this matter the Court is of the opinion that it should not grant the complainant any relief.

There remain for consideration three mortgages.

As to the Campbell mortgage, while it appears on its face peculiar, nevertheless the respondent, Margaret Carter, has given a more or less reasonable explanation.

As to the Bello mortgage on the Burgess Street property, this was never in the hands of Michael J. Read. It was given first to Joseph Read, who transferred it to Michael W. Read. to whom it was apparently paid. After careful consideration, the Court does not feel that it ought to charge Michael W. Read with the proceeds of this mortgage on the theory that it actually belonged to Michael J. Read. The testimony does not seem clear and definite enough to make such finding warranted.

The Melino mortgage, however, on the Atwells Avenue property, seems on a different basis. Michael J. Read held this in his own name for a time. It was later transferred to his daughter, Margaret Carter, who received the final payment of something over $4000 and discharged it. This property was purchased and fixed up by Mr. Read and the mortgage in question taken as part payment. A consideration of this whole situation and the way it was handled leads the Court to the conclusion that this mortgage was actually the property of Mr. Read and was merely being held by his daughter so that the creditors could not reach it. The Court is of the opinion that as to the proceeds of this mortgage received by Mrs. Carter, she should account to the complainant, particularly as she apparently has in her possession a substantial part, if not all, of the bank accounts.

From the record in the case, it appears that a receiver of the rents and profits of various parcels of real estate was appointed some time ago. If, after the payment of the expenses of the receivership, he has in his hands any funds which are derived from the properties above indicated, which in the judgment of the Court properly belong to Michael J. Read, and as to which the Court has given the complainant relief, such sums should also be turned over to the complainant.

The prayers for relief in the bill are granted to the extent hereinbefore indicated.

· For complainant: William A. Gunning.

For respondents: John 'C. Mahoney of Flynn & Mahoney, John P. Hartigan.